## 5311.  ROCKMART BANK *v.* NIX.

The evidence not demanding the verdict against the garnishee, the court erred in directing the jury so to find.

DECIDED JANUARY 20, 1914.

Garnishment; from Polk superior court—Judge Graham presiding.

*R. C. Ramey, John K. Davis.* for plaintiff in error.

*I. F. Mundy,* contra.

POTTLE, J. This case arose upon the trial of an issue formed upon the traverse of an answer to a summons of garnishment. Nix sued Baldwin on open account for $89.85, principal, and $5.76, interest; and summons of garnishment issued May 28, 1912, and was served on May 29, 1912, upon the Rockmart Bank. On June 24, 1912, the bank answered not indebted, and on September 23, 1912, the answer was traversed. The case reached the superior court on appeal, where the bank moved to dismiss the traverse, because it was not filed until three months after the answer. The judge overruled the motion to dismiss; and while error is assigned upon this judgment, the point is not argued in the brief of counsel for the bank, and will not be considered. The record is confusing, but the following facts may be gathered from the evidence: Baldwin purchased a farm, paid part of the purchase-money, and received, bond for title, which subsequently he transferred to his wife, upon an alleged valuable consideration. He had exempted certain personal property owned by him and used in connection with the farm. One Ruddell opened negotiations with him to purchase the farm, and the purchase-price was agreed on. When the parties met to close the transaction it appeared that the bond for title had been transferred to Baldwin's wife, and that the personal property had been exempted. Thereupon it was agreed that an order would be procured from the superior court, authorizing the sale of the homestead property for reinvestment. Until this could be done, in order to protect himself, Ruddell, on May 28, 1912, executed a check, payable to the Rockmart Bank, for $350, with the understanding that when the order for the sale of the homestead property had been obtained the money should be paid over to Mrs. Baldwin. This check was indorsed by Mrs. Baldwin and placed in the bank for collection. On the same day Ruddell gave a check for $105.04 for

a part of the agreed price, payable to the order of Baldwin. This check was indorsed in blank by Baldwin and found its way into the Rockmart Bank. It does not appear, from the evidence, who delivered the check to the bank. The value of the personal property exempted under the homestead was not shown, nor is there any evidence to impeach the fairness of the transfer by Baldwin of the bond for title to his wife. The plaintiff in the suit, on account of which the garnishment issued, had not obtained judgment at the time of the transfer of the bond for title from Baldwin to his wife. Both of the checks above referred to were drawn on the Third National Bank of Atlanta. The Rockmart Bank endorsed the checks and forwarded them for collection. The check for $105.04, made payable to Baldwin, was, on June 12, 1912, credited by the Third National Bank of Atlanta to the Rockmart Bank, and on June 11, 1912, the check for $350 was likewise credited by the Third National Bank of Atlanta. There was introduced in evidence, from the records of the Rockmart Bank, two lists of items sent to the Third National Bank of Atlanta. One of these lists contained the check for $105.04, payable to Baldwin, and six other items. The other statement of checks showed the check of $350 and five other items. There was stamped on the bottom of each list of checks the following: "Paid July 12, 1912. Rockmart Bank, Rockmart, Ga." The trial judge directed a verdict against the garnishee, and it excepted.

It can not be contended that the evidence demanded a finding that Baldwin had such an interest in the proceeds of the $350 check as to authorize the direction of a verdict against the garnishee. On the trial it was admitted by counsel for the garnishing creditor that so much of the fund as represented the value of the homestead property would not be subject to the garnishment, and since the burden of showing that the garnishee was indebted was on the creditor who traversed the answer of the garnishee, he could not subject any part of this fund to his debt without showing affirmatively that the exempted property was worth less than $350. The evidence does not disclose what this property was worth. The correctness of the judgment directing the verdict depends on whether the proceeds of the check for $105.04 were subject to the garnishment. The check was indorsed in blank; the title to it therefore would pass by delivery. The mere fact that Baldwin indorsed the

check in blank does not compel the inference that he deposited the check in the bank. For aught that appears, he may have delivered the check to some other person, who in turn placed it with the bank. There being nothing in the evidence to indicate the contrary, the presumption is that the check was placed with the bank for collection; but this presumption could be rebutted by affirmative proof that the bank bought the check, and that thereafter the depositor had no interest in either the check or its proceeds. *Cronheim* v. *Postal Telegraph-Cable Co.*, 10 *Ga. App.* 716 (74 S. E. 78). If, therefore, the evidence had shown that Baldwin deposited the check with the bank, this would have authorized the inference that the check was deposited for collection, and proof of collection by the bank would have made out a prima facie case in favor of the creditor. In that event the bank could have relieved itself of liability by showing that it paid the money to its principal before the summons of garnishment was served. We do not think the stamp of the Rockmart Bank on the list of checks sent to the Third National Bank of Atlanta was sufficient proof that the Rockmart Bank had paid out the money collected on the checks; but even if it was, it was certainly no proof that the money had been paid to Baldwin. There is no presumption that Baldwin, rather than some third person to whom it may have been delivered, deposited the check with the bank. Hence mere proof that the proceeds of the check had been paid out by the bank would not be sufficient to show that the money had been paid to Baldwin. As stated above, the evidence is in much confusion, and on the whole we think it best to send the case back, in order that the real truth of the transaction may be developed, so that it can be fairly determined whether the garnishee is indebted to Baldwin in any sum.

*Judgment reversed.*